**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

PATRICIA M. SKELLY,

      Plaintiff,

v.                                    Case No.:

OKALOOSA COUNTY, FLORIDA BOARD OF
COUNTY COMMISSIONERS, in its
official capacity; NOLAN HAYNES,
in his individual capacity; DENNIS FIELDS, in
his individual capacity;

      Defendants.
_____/

**COMPLAINT**

Plaintiff, PATRICIA M. SKELLY, by and through her undersigned attorney, sues the Defendants, OKALOOSA COUNTY, FLORIDA BOARD OF COUNTY COMMISSIONERS ("COUNTY"), in its official capacity; NOLAN HAYNES, in his individual capacity ("HAYNES"); and DENNIS FIELDS, in his individual capacity ("FIELDS"); and alleges as follows:

**I. INTRODUCTION
JURISDICTION AND VENUE**

1.      This is an action for damages and attorneys fees arising under 42 U.S.C. §§1983 and 1988 and Florida common law.

2.      This action makes issue and alleges a violation of the United States

Constitution, including, but not limited to, a violation of the Fourteenth Amendment which make illegal the excessive use of force against pre-trial detainees.

3. This Honorable Court has original jurisdiction over this action and the parties named herein, pursuant to 42 U.S.C. §§ 1983 and 1988; the U.S. Constitution; and the provisions in 28 U.S.C. § 1331 and 1343, et. seq.

4. Venue is posited in United States District Court, Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. §1391 and N.D. Fla. Loc. R.3.2(a)(1); and by virtue of the status of each party as more fully described below.

5. The acts, omissions and practices described hereafter all occurred within the jurisdiction of the United States District Court in and for the Northern District of Florida.

6. Plaintiff, PATRICIA M. SKELLY, seeks an award of compensatory damages, costs and expenses and reasonable attorney's fees pursuant to 42 U.S.C. § 1983, more specifically described below. Fee entitlement is as alleged pursuant to 42 U.S.C. § 1988.

7. At all times material hereto, the acts, omissions, practices and other conduct of each Defendant were committed under color of state or local law.

8. At all times material hereto, the acts and omissions of Defendants HAYNES and FIELDS were committed within the course and scope of their employment as agents and employees of Defendant COUNTY.

## II. PARTIES

9. At all times material hereto, Plaintiff, PATRICIA M. SKELLY, was an adult citizen of the State of Vermont visiting Florida.

10. At all times material hereto, Defendant, COUNTY, was and is a "person"

subject to suit under 42 U.S.C. § 1983. It is sued solely in its official capacity.

11. At all times material hereto, Defendant HAYNES was a Sergeant at the Okaloosa County Jail, which at all times relevant was owned and operated by Defendant, COUNTY, acting within the course and scope of said employment. He is sued in his individual capacity.

12. At all times material hereto, Defendant FIELDS was a correctional officer at the Okaloosa County Jail, which at all times relevant was owned and operated by Defendant, COUNTY, acting within the course and scope of said employment. He is sued in his individual capacity.

13. At all times material hereto, Defendant COUNTY, through its agents and employees, was responsible for the proper and efficient enforcement of the laws, regulations, policies, practices and procedures of such political entity; the laws and regulations of the State of Florida; and the Constitution of the United States with respect to the ownership and operation of the Okaloosa County Jail.

14. Plaintiff PATRICIA M. SKELLY has retained the services of the undersigned attorney and is obligated to pay a reasonable attorney's fee for such services in pursuing the claims asserted herein.

### III. FACTS APPLICABLE TO ALL COUNTS

15. On or about March 27, 2005, Plaintiff PATRICIA M. SKELLY was arrested by the Valparaiso, Florida Police Department and taken to the Okaloosa County Jail, which is owned and operated by Defendant COUNTY, as a pre-trial detainee.

16. At the time of her intake at the jail, Ms. Skelly was 47 years old, 5 feet and

5 inches tall, weighed 107 pounds, and was in handcuffs.

17.     Prior to Ms. Skelly's arrival at the jail's intake vestibule, Defendants HAYNES and FIELDS were informed by the arresting officer that Ms. Skelly was extremely confused and combative and a "signal 20" (indicating that she was mentally ill). In fact, Ms. Skelly suffered from bipolar disorder and other mental illnesses.

18.     Despite being warned that Ms. Skelly was combative, mentally ill, and had been arrested in part for "Resisting an Officer With Violence," Defendants HAYNES and Deputy MINOR removed Ms. Skelly's handcuffs upon intake because she "seemed cooperative" at the time.

19.     After Ms. Skelly's handcuffs were removed, Defendant HAYNES reports that Deputy MINOR ordered Ms. Skelly twice to move to the wall of the vestibule to be searched. Ms. Skelly did not comply.

20.     Defendant HAYNES reports that he had to direct Ms. Skelly to the wall, where she repeatedly removed her hands from the wall during Deputy MINOR's search, requiring her to be repositioned and have her hands placed back on the wall. At no time during this search did Defendant Skelly threaten Deputy MINOR or Defendant HAYNES or attempt to cause them any harm. Defendant MINOR was able to complete her search of Ms. Skelly.

21.     After Ms. Skelly was searched, Defendant HAYNES and Deputy MINOR did not reapply the handcuffs to Ms. Skelly.

22.     Defendant HAYNES reports that as Deputy MINOR was attempting to escort Ms. Skelly from the intake vestibule to the Admission, Classification and Release (ACR)

area of the jail, Ms. Skelly placed her right hand on the door frame, resisting Deputy MINOR's attempts to move her from the vestibule to the ACR area.

23. Defendant HAYNES reports that as Ms. Skelly was resisting being taken into the ACR area, she stated "I want to go outside," and began to pull away from Deputy MINOR.

24. Instead of attempting to de-escalate the situation with a mentally ill inmate through verbal communication or attempting to control Ms. Skelly physically, as a single Valparaiso police officer had previously done, Defendant HAYNES decided to immediately resort to using his M26 taser on Ms. Skelly.

25. The M26 taser can be used in two different modes. In the first mode, an air cartridge is attached to the front of the taser which shoots two barbed projectiles connected to the taser by wires into the target. In the second mode, known as the "drive stun" mode, the air cartridge can be removed from the front of the taser so that the front of the taser can be placed directly against the target's skin, and electrical shocks can be delivered to the target through two electrical contact points at the front of the taser. In either mode, the taser shocks its target with 50,000 volts and 26 watts of electricity. One trigger pull will initiate a 5 second charge, though if the trigger is held down, the taser will continuously shock the target until either the trigger is released or the taser's battery dies. The effectiveness at incapacitating a suspect using the first mode depends upon how far apart the probes penetrate the target's skin or clothing. The further apart they are spread, the more likely the target will be incapacitated, as more muscle mass will feel the effects of the charge. A small spread of the probes will likely not incapacitate a target, but rather merely inflict pain. When the taser

is used in "drive stun" mode, it is considered strictly a pain compliance tool.

26. Defendant HAYNES used his taser against Ms. Skelly in the first mode described above, firing probes from an air cartridge into Ms. Skelly, shocking her with 50,000 volts of electricity. Ms. Skelly was immediately incapacitated and fell to the ground, striking her face against the hard floor and receiving a large laceration over her right eye.

27. When Ms. Skelly regained consciousness, she found herself being physical restrained on the ground by two officers employed by Defendant County, Officer Andrus and Deputy Minor, as Defendant Haynes approached her again with the taser. Skelly began to struggle to avoid the impending infliction of pain, begging Haynes not to hurt her anymore. Haynes proceeded to tase Skelly numerous additional times in both the first mode (Haynes had attached a new air cartridge to his taser) and then in the second mode described above, during which period Skelly's hands were placed behind her back into the handcuffs. During this period, Ms. Skelly was tased on and about her legs near her buttocks.

28. As a result of her numerous injuries, the medical unit was contacted to determine if Ms. Skelly would be admitted to the jail. LPN "Barbara" refused to allow Ms. Skelly to be admitted, and advised Defendant Haynes that Skelly should be taken to a local hospital for suturing of the laceration over her right eye that resulted from the initial tasing of Skelly.

29. Defendant Haynes directed Deputies Minor and Mabou to transport Ms. Skelly to the North Okaloosa Medical Center.

30. During the aforesaid transport, Deputy Minor advised Defendant Haynes that Ms. Skelly rearranged her handcuff restraints to the front of her body. Defendant Haynes

then advised Deputy Minor to return to the jail to have the handcuffs resecured behind her back.

31.     Once the transport vehicle returned to the sallyport area of the jail, Ms. Skelly grabbed hold of the vehicle security cage as several officers attempted to pull her out of the vehicle.

32.     Once on the ground, Ms. Skelly placed her hands to her face and began biting her fingers.  Defendant Fields then applied his taser to various parts of Plaintiff's body, on at least five (5) additional occasions, to inflict pain to Ms. Skelly.  Such body areas include the inside of Ms. Skelly's thigh, the upper part of Ms. Skelly's thigh, and her stomach.  During this tasering by Defendant Fields, the Defendants and others re-applied the handcuffs from the front of Plaintiff's body to behind her back.  At all times during this tasing period, Ms. Skelly's hands were handcuffed either in front of her body or behind her back.  Leg irons were then applied as well.  At this point, Plaintiff Skelly had been tased approximately fourteen (14) times.

33.     Plaintiff was then transported to North Okaloosa Medical Center for treatment of the head injury she received at the Okaloosa County Jail during the first tasing incident.

### COUNT I
### CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 AND 1988
### INDIVIDUAL CAPACITY EXCESSIVE FORCE CLAIM - HAYNES AND FIELDS

34.     Plaintiff realleges paragraphs 1 through 33 as if fully set forth herein.

35.     At all times material hereto, Defendants Haynes and Fields had a legal duty

to use only that amount and degree of force in the control of pre-trial detainees as was reasonable under the circumstances, for proper and efficient supervision and control of such persons.

36.     Defendant Haynes was on notice that Plaintiff was combative and mentally ill when she was delivered to the Okaloosa County Jail by the Valparaiso Police Department. Defendant Haynes nevertheless ordered that Plaintiff's handcuffs be removed, thereby himself creating a situation wherein a use of force might be required. Defendant Fields was also on notice of Plaintiff's mental condition.

37.     The use of force by Defendants Haynes and Fields was grossly excessive, as Plaintiff Skelly was already in their respective physical custody, posed no threat to them, and could have been controlled without causing her harm, as was done previously by a single Valparaiso police officer in a less controlled environment, a hotel room.

38.     By their actions, Defendant Haynes and Fields intentionally deprived Plaintiff Skelly of the right to be free from the excessive force by a law enforcement officer. The right to be free from the excessive use of force by a law enforcement officer is clearly established, and was established well prior to March 27, 2005, by the Fourteenth Amendment to the U.S. Constitution.

39.     Defendants Haynes and Fields had no right, privilege or legal justification to use the degree of force they used, respectively, against Plaintiff Skelly.

40.     No reasonably prudent law enforcement or correctional officer could believe that the degree of force used by Defendants Haynes and Fields against Plaintiff Skelly, under the circumstances presented, was reasonable.

41.     At all times material, Defendant Haynes and Fields were acting under color of authority of the State of Florida and as correctional officers for Defendant County at the Okaloosa County Jail.

42.     As a direct, proximate and foreseeable result of the actions of Defendant Haynes and Fields, Plaintiff Skelly has suffered bodily injuries and resulting pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical and nursing care and treatment, and other losses. These injuries and losses are permanent and continuing and Plaintiff Skelly will suffer such losses in the future.

43.     The conduct causing loss, injury and damages to Plaintiff Skelly was intentional and showed such reckless or deliberate indifference to the rights of Plaintiff Skelly as to be the equivalent to an intentional violation of those rights.

WHEREFORE, Plaintiff prays that this Honorable Court grant the following relief on her civil rights claim brought pursuant to 42 U.S.C. §§ 1983 and 1988:

A. Judgment for compensatory damages against Defendant Haynes and Defendant Fields, individually, respectively;

B. Judgment for punitive damages against Defendant Haynes and Defendant Fields, individually, respectively;

C. Judgment for attorney's fees pursuant to 42 U.S.C. § 1988, together with the costs and expenses of this civil rights action;

D. Judgment for pre-judgment interest on all economic losses, including attorney's fees for delay in payment;

E. A trial by jury on all issues so triable; and

F.  Such other and further relief that this Court may deem just, proper and appropriate.

## COUNT II
## STATE LAW CLAIM FOR BATTERY AGAINST
## DEFENDANT HAYNES AND DEFENDANT FIELDS

44. Plaintiff Skelly realleges paragraphs 1 through 33 as if fully set forth herein.

45. The conduct of Defendants Haynes and Fields was intentional, willful, wanton and malicious.

46. The conduct of Defendants Haynes and Fields was committed within the course and scope of their employment with Defendant County.

47. The conduct of Defendants Haynes and Fields, respectively, constituted offensive and unprivileged touching on the person of Plaintiff Skelly

48. As a direct result of the battery committed by Defendants Haynes and Fields, respectively, Plaintiff Skelly suffered bodily injuries and resulting pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical and nursing care and treatment, and other losses.  These injuries are permanent and continuing and Plaintiff Skelly will suffer such losses in the future.

WHEREFORE, Plaintiff Skelly prays for judgement of compensatory damages and punitive damages against Defendant Haynes and Defendants Fields, respectively, together with prejudgment interest on all economic losses, costs of this action, and a trial by jury on all issues so triable.

## COUNT III
## STATE LAW CLAIM FOR BATTERY AGAINST
## DEFENDANT COUNTY

49.     Plaintiff Skelly realleges paragraphs 1 through 33 as if fully set forth herein.

50.     Count III is pled in the alternative to Count II.

51.     The conduct of Defendants Haynes and Fields was intentional but was not willful, wanton, or malicious.

52.     The conduct of Defendants Haynes and Fields was committed within the scope of their respective employment with Defendant County.

53.     The conduct of Defendants Haynes and Fields, respectively, constituted offensive and unprivileged touching on the person of Plaintiff Skelly.

54.     Defendant County is responsible for the battery committed on Plaintiff Skelly by Defendants Haynes and Fields, respectively, in that each civil battery was intentional, but not malicious, and was committed within the scope of Defendants Haynes' and Fields' employment with Defendant County, such that the doctrine of <u>respondeat superior</u> applies to this action.

55.     Plaintiff Skelly has complied with all conditions precedent necessary for the maintenance of this action, including but not limited to, compliance with <u>Florida Statutes</u> § 768.28.

56.     As a direct result of the battery committed by Defendants Haynes and Fields, respectively, Plaintiff Skelly suffered bodily injuries and resulting pain and suffering, mental anguish, loss of enjoyment of life, expenses of medical and nursing care and treatment, and other losses.  These injuries are permanent and continuing and Plaintiff Skelly will suffer such losses in the future.

WHEREFORE, Plaintiff Skelly prays for judgment of compensatory damages against Defendant County, together with pre-judgment interest on all economic losses, costs of this action, and a trial by jury on all issues so triable.

/s/Robert T. Bleach
Robert T. Bleach, Esq.
Florida Bar No. 089095
Soloway Law Firm, P.A.
1013 Airport Boulevard
Pensacola, Florida 32504
(850) 471-3300 (T)
(850) 471-3392 (F)
Attorney for Plaintiff