IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF FLORIDA PENSACOLA DIVISION

PATRICIA M. SKELLY

       Plaintiff,

v.

                                         Case No.: 3:08-cv-428-MCR/MD

OKALOOSA COUNTY, FLORIDA BOARD OF
COUNTY COMMISSIONERS, in its
official capacity; NOLAN HAYNES,
in his individual capacity; DENNIS FIELDS, in
his individual capacity;

       Defendants,
_____/

**PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS IN SUPPORT
OF HER MEMORANDA OF LAW OPPOSING DEFENDANTS'
AMENDED MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff, Patricia Mary Skelly, by and through her undersigned attorney, files the following Statement of Disputed Material Facts in Support of her Memoranda of Law Opposing Defendants' Amended Motions for Summary Judgment and states as follows:

As an initial matter, Ms. Skelly disputes the materiality of all references Defendants make in their Statement of Undisputed Facts as to the events leading up to the point at which Defendants were notified that a "combative signal 20" suspect was being brought to the Okaloosa County Jail, along with all references to events which transpired after the multiple tasings of Ms. Skelly by Defendant Fields. As neither Defendant Fields nor Defendant Haynes had any knowledge of such

events at the time they made their decisions as to the amount of force to be used against Ms. Skelly, none of these facts can be used to determine the "reasonableness" of their actions. Prior to Ms. Skelly's initial arrival at the jail (and indeed, at all times during the use of force incident), Defendant Haynes' only knowledge about her was that she was a "combative signal 20" ("signal 20" being code referring to someone who appears mentally ill"). (Haynes deposition, p. 6; Minor deposition, p.17). He received no information about the circumstances of her arrest, any events preceding the arrest, or any behavior exhibited by her prior to her arrival other than the "combative signal 20" description. (Haynes deposition, pp. 6, 9). Defendant Fields was not even aware that Ms. Skelly had been called a "Signal 20" when she first arrived at the jail. (Fields Deposition, p. 13). Obviously, any alleged actions taken by Ms. Skelly at the North Okaloosa Medical Center after Haynes and Fields uses of force would not be material to these Defendants' decisions about what amount of force to use against Ms. Skelly.

Additionally, because Ms. Skelly is not making a claim for false arrest by the Valparaiso police department, Defendants' allegations regarding the status of criminal charges brought against her stemming from incidents prior to her being brought to the Okaloosa County Jail would also be immaterial. No charges are alleged as a result of Ms. Skelly's conduct at the jail. Therefore, the charges stemming from the incident at the Budget Inn and her arrest by Valparaiso police have absolutely no bearing on the excessive force issues raised in the Complaint, or on whether Defendants are entitled to summary judgment.

Plaintiff disputes the account of events described upon her arrival at the jail. Ms. Skelly testified that when she was brought to the jail and turned over to corrections personnel, while still

2

in handcuffs, she was knocked forward from behind, causing her to fall to the ground. (Skelly deposition, pp.117-122). She could not say whether the blow from behind was a shove or a taser shooting her in the back, as she did not see what kind of force had caused her to fall. (Skelly deposition, pp.130-132). Defendant Haynes testified that she fell due to him tasing her. (Haynes deposition, pp. 28-31). After she was on the ground, Ms. Skelly was tased approximately eight or nine times before she recalled losing consciousness. (Skelly deposition, p.117). Ms. Skelly testified that this attack from behind and subsequent tasing was unprovoked, as she had not been given any commands at that point, and would have been compliant with any commands given, as she was intimidated. (Skelly deposition, pp.132-134). The only correctional officer who admitted to tasing Ms. Skelly in the vestibule was Defendant Haynes, and the log[1] from his taser indicates that he tased Ms. Skelly at least eight or nine times, possibly ten. (See Haynes' taser log, entries 443-452). While Defendants refer to statements made in Ms. Skelly's Complaint which are contrary to her testimony, the court is not allowed to disregard Ms. Skelly's testimony despite the statements in her own Complaint.[2] Ms. Skelly's sworn testimony creates issues of disputed fact as to whether she offered

---

[1] The taser electronically records by date and time each trigger pull. If the trigger of the taser is held down for more than five seconds, the default amount of time the taser delivers a charge, it also records additional trigger pulls every time the trigger is held down for more than five seconds. In theory, a taser could deliver one continuous charge of energy until its batteries went dead if the trigger were held down long enough. In such an instance, the log would reflect a trigger pull from the time of the initial trigger pull and every five seconds thereafter.

[2] *See Few v. Cobb County, Ga.*, 147 Fed. Appx. 69, 70-71 (11th Cir. 2005) (reversing summary judgment, including finding of qualified immunity, in favor of defendant where district court disregarded sworn testimony of the plaintiff due to it contradicting allegations in plaintiff's complaint).

any resistance to Defendant Haynes, and whether she was handcuffed at the time she was tased by Haynes.

Defendants' own account of the events surrounding the first tasing incident (by Haynes) creates a disputed issue of fact as to whether Ms. Skelly tried to strike officer Minor when officer Minor was allegedly patting Ms. Skelly down. Defendant Haynes testified in one breath that he thought Ms. Skelly was trying to strike officer Minor during the pat-down search, but then states in response to the following question:

> Q. Why would you not handcuff someone who tried to strike another officer even though they're being brought into the facility?
>
> A. It's a judgment call.

(Haynes deposition, pp. 19-20). A jury could reasonably infer that Defendant Haynes' decision not to re-handcuff Ms. Skelly after the pat-down search was because he did not believe that Ms. Skelly was actually trying to strike officer Minor.

Plaintiff also disputes Defendants' claims that Defendant Haynes issued a warning prior to tasing her. (Skelly deposition, pp.132-134). Defendant Haynes' own testimony contradicts that such a warning was given. (Haynes deposition, p.28 "She jerked, I fired."; p.31 Q "Did you warn Officer Minor that you were about to use the taser?" A "Didn't have time."). If Defendant Haynes did not have time to warn officer Minor that he was about to use his taser, a jury could reasonably infer that he did not have time to warn Ms. Skelly.

Ms. Skelly disputes the timing of when one of Defendant Haynes' taser probes became dislodged from her body after the initial tasing, or that she failed to receive an electrical charge from

one of the trigger pulls. Defendants claim that the probe became dislodged when Ms. Skelly fell down. However, the use of force report prepared by officer Andrus claims that the probe became dislodged not from Ms. Skelly falling, but from the "scuffle" of him attempting to handcuff her on the ground. (Andrus use of force report). It also claims that Defendant Haynes then shot Ms. Skelly with another set of probes, creating an issue of fact as to whether any of Defendant Haynes' trigger pulls failed to deliver their charge to Ms. Skelly. (Andrus use of force report).

Ms. Skelly disputes Defendants' assertion that Defendant Haynes' initial drive-stun tasing of Ms. Skelly did not result in any electrical charge being sent into her body. Defendant Haynes merely testified that he could not maintain a full five second contact with Ms. Skelly during this drive stun. He does not claim that she did not receive any current. (Haynes deposition pp.33-35). The citation attributed to officer Minor by Defendants in support of this proposition (Minor, p.37, l. 9-22) does not even address whether Defendant Haynes successfully drive-stunned Ms. Skelly or not.

As to the second tasing incident involving Defendant Fields, Ms. Skelly disputes that Fields issued a warning prior to tasing her inside the vehicle. His own use of force report reads as follows: "At that time the inmate grabbed the cage in the car and refused to release her hold. At that time per Sgt. Haynes I applied a drive stun to the inmate's lower left back which made her release her hold on the cage." (Fields Use of Force Report). This report makes no mention of a warning being issued prior to the drive stun.

As to the expert witness report by Michael Brave, this report cannot create an issue of undisputed fact regarding whether the use of force by Defendants was reasonable, as Mr. Brave has no direct knowledge of the events giving rise to this lawsuit. Also, it directly invades the province

of the jury, in that it speaks as to the specific actions of the individuals involved, and not in terms of hypothetical scenarios, as required by *Samples v. City of Atlanta*, 916 F.2d 1548, 1552 (11th Cir. 1990). Therefore, because these opinions could not even be rendered by Mr. Brave to a jury, they cannot create an issue of undisputed fact.

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished to Roper & Roper, P.A., 116 N. Park Avenue Apopka, FL 32703 via electronic filing this 13th day of July, 2009.

/s/Robert T. Bleach
Robert T. Bleach
Florida Bar No: 089095
Soloway Law Firm
1013 Airport Blvd.
Pensacola, Florida 32504
(850) 471-3300 (T)
(850) 471-3392 (F)
Attorneys for Plaintiff