**UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**


**PATRICIA M. SKELLY,**

       **Plaintiff,**

**v.**                                                        **Case No. 3:08cv428/MCR/MD**


**OKALOOSA COUNTY, FLORIDA**
**BOARD OF COUNTY COMMISSIONERS,**
**in its official capacity; NOLAN HAYNES,**
**in his individual capacity; DENNIS FIELDS,**
**in his individual capacity,**

       **Defendants**.
_____/


**O R D E R**

This case has been stayed pending appeal to the Eleventh Circuit of an order granting summary judgment in favor of the defendants (*see* doc. 154).  The appeal is now concluded, the order has been vacated, and the case has been remanded to this court for reconsideration consistent with the Eleventh Circuit's opinion in *Skelly v. Okaloosa County Bd. of County Com'rs*, No. 10-11842, 2011 WL 539053 (February 17, 2011) (unpublished). Accordingly, the stay is now lifted, the court has reconsidered the defendants' summary judgment motions using the standard articulated by the Eleventh Circuit, and the court now denies the motions.

**Background**[1]

      Viewing the evidence in the light most favorable to the plaintiff, the Eleventh Circuit summarized the facts as follows:

> On March 27, 2005, Skelly was arrested by Valparaiso police officers, taken to the Valparaiso Police Department where she was charged with trespassing and resisting arrest, and then transported to the Okaloosa County Detention Center ("OCDC").  This action arises out of an altercation that occurred while correctional officers escorted Skelly into the OCDC's receiving vestibule.  During the altercation, OCDC officers used their Taser guns on Skelly multiple times, resulting in Skelly being taken to the hospital.
>
> * * *
>
> Undisputed evidence indicated that during her arrest and detention by the Valparaiso Police Department, Skelly at times was disoriented and combative.  However, by the time Skelly arrived at the OCDC she was in handcuffs and compliant.  At this point, the parties' versions of what transpired differ significantly.  Skelly testified that the altercation was completely unprovoked and rendered her unconscious until she awoke at the hospital.

*Skelly*, 2011 WL 539053, at *1.

      Additional details include the following:  Skelly stated in her deposition that she was handcuffed during the transport from the Valparaiso Police Department to the OCDC, and as she entered the OCDC receiving vestibule, she was immediately knocked down from behind without provocation and repeatedly shocked by a Taser until she lost consciousness.  She stated, "The minute I came around the corner, somebody threw me to the ground, and that's when I started getting Tasered.  It was that fast." (Doc. 102-1, at 4.)  She asserts that prior to this, the officers said nothing to her; no one said anything threatening; she said nothing to them; and she saw six to eight people standing around. Skelly testified in her deposition that when she awoke after the incident, she was in the hospital.  Taser log entries indicate that Sergeant Haynes used the Taser eight to ten times

---

[1]  For the limited purposes of this summary judgment proceeding, the court views "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party," in this case Skelly, *Martin v. Brevard County Pub. Sch.*, 543 F.3d 1261, 1256 (11th Cir. 2008) (internal marks omitted), bearing in mind that "what is considered to be the facts at the summary judgment stage may not turn out to be the actual facts if the case goes to trial," *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

during the incident in the OCDC's receiving vestibule, and Officer Fields applied the Taser approximately seven or eight times as they tried to get Skelly from the secure sally port of the OCDC, where the transport vehicle was parked, to the hospital.

As the Eleventh Circuit noted, the parties' versions of what transpired differs significantly.  The Eleventh Circuit accurately and succinctly summarized the officers' version of the events as follows:  "The OCDC officers testified that Skelly was repeatedly non-compliant and combative, requiring them to use their Taser guns in the OCDC receiving vestibule and then again while they tried to transport Skelly to the hospital." *Skelly*, 2011 WL 539053, at *1.

Skelly was transported to the North Okaloosa Medical Center.  Medical nurse Teresa White was on duty when Skelly arrived, and she testified that Skelly was thrashing about, yelling, and kicking so that medical personnel were forced to strap her down and medicate her.  Additionally, White testified that Skelly appeared to be having a psychotic episode.[2]  Pictures of Skelly's wounds show an abrasion near her right eye and several burn marks on the back of her upper right thigh, her front upper left thigh, and her upper and lower back, as well as one mark on her left mid-section.

Skelly brought suit pursuant to 42 U.S.C. § 1983, against Haynes and Fields in their individual capacities for the alleged use of excessive force, in violation of the Fourteenth Amendment (Count I); and state law battery, alleging their conduct was intentional, willful, wanton and malicious (Count II).  Alternatively, Skelly asserted a claim of state law battery against Okaloosa County Board of County Commissioners ("the County") under the doctrine of *respondeat superior* (Count III), alleging the officers' conduct was intentional but not willful, wanton, or malicious.  The officers and the County filed motions for summary judgment, supported by their deposition testimony and police reports.  Defendants also submitted expert testimony of Michael Brave, who stated, in part, that the Taser log shows only device activation; it does not represent that a shock was actually delivered to a body. Skelly opposed the motions.  This court originally granted summary judgment in favor of

---

[2] Alternatively, White thought Skelly might have been under chemical influence, but medical evidence confirmed the absence of drugs or alcohol in Skelly's system.  (Doc. 91-9, at 2.)

all defendants, concluding that Skelly had not set forth competent facts raising an inference of malice necessary to show a Fourteenth Amendment excessive force violation.  The court found Skelly's testimony to be unreliable due to the fact that she was suffering a psychotic episode at the time of the incidents, as observed by medical personnel when she arrived at the hospital, and she admittedly had an incomplete memory of the day's events.  On appeal, the Eleventh Circuit vacated the order and instructed this court to reconsider the motions under summary judgment standards, crediting Skelly's testimony.  *Skelly*, 2011 WL 539053, at *2-3.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995).  An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (also noting "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment).    Whenever the nonmoving party has presented "sufficient, competent evidence" to support his or her version of the disputed facts, the court will resolve disputes in the plaintiff's favor.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote omitted)).  In reviewing the record for

summary judgment purposes, the court will not make credibility determinations, weigh the evidence presented, "or choose between conflicting testimony."  *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008); *see also Anderson*, 477 U.S. at 255.

Officers' Motion for Summary Judgment

The officers seek summary judgment, asserting that there is no genuine issue of material fact in opposition to their allegations that Skelly was repeatedly violent and non-compliant and a threat to herself and others; they assert that their actions were objectively reasonable.  Consequently, the officers argue that they are entitled to qualified immunity and that Skelly cannot meet her burden of proof on the civil battery claim.  Skelly's complaint states she was a pretrial detainee and asserts her claims are based on the Fourteenth Amendment; accordingly, the court will apply the Fourteenth Amendment standards.  *See Skelly*, 2011 WL 539053, at *2 n.2 (applying the Fourteenth Amendment because the complaint alleged only Fourteenth Amendment claims and has not been amended).

Under the Fourteenth Amendment, the use of force is excessive and shocks the conscience in violation of due process rights if "the force was used and the injury inflicted not in a good faith effort to maintain and restore discipline, but maliciously and sadistically for the very purpose of causing harm."[3] *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986)).  Force in this context is not unconstitutional "merely because it is unreasonable or unnecessary."[4] *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).

---

[3]  The analysis under the Fourteenth Amendment is the same as that applicable to claims under the Eighth Amendment, which applies to convicted prisoners, and thus Eighth Amendment cases are also instructive.  *See Fennell v. Gilstrap*, 559 F.3d 1212, 1216 n.5 (11th Cir. 2009).

[4]  The defendants assert that the objective reasonableness standard of the Fourth Amendment applies, but the complaint pleaded the Fourteenth Amendment and facts indicating Skelly was a pretrial detainee.  It is clear "that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."  *Graham v. M.S. Connor*, 490 U.S. 386, 395 n.10 (1989).  What is important in the Fourteenth Amendment context "is the mindset of the individual applying the force."  *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1936 (2010).  The standard for showing excessive force in violation of the Fourteenth Amendment is higher than that required under the Fourth Amendment. *Fennell*, 559 F.3d at 1217.

To evaluate whether a jailer's actions shock the conscience, the court considers the following factors:  (1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury;[5] (4) the extent of the threat to staff or other inmates, "as reasonably perceived by the responsible official on the basis of facts known to them;" and (5) "any efforts made to temper the severity of a forceful response."  *Whitley*, 475 U.S. at 320-21; *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009); *Danley v. Allen*, 540 F.3d 1289, 1307 (11th Cir. 2008), *overrruling on other grounds recognized* in *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010) (noting heightened pleading standard has been effectively overturned by the Supreme Court).  In applying this analysis, the court accords prison officials "wide-ranging deference" when they are acting "to preserve internal order and discipline and to maintain institutional security."  *Whitley*, 475 U.S. at 321-22 (internal marks omitted)*; see also Fennell*, 559 F.3d at 1217; *Danley*, 540 F.3d at 1307.  Nonetheless, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated."  *Hudson*, 503 U.S. at 9.

Crediting Skelly's testimony, she was compliant and handcuffed when she arrived at the OCDC; the altercation was completely unprovoked; she was attacked from the back while handcuffed; the officers repeatedly Tasered her until she was unconscious; and she awoke later at the hospital with multiple Taser wounds.  Skelly has no independent recollection of the second Taser use, which apparently occurred in the locked sally port of the OCDC, where she was in the car and in handcuffs ready to be taken to the hospital after the first incident.  Again she received multiple Taser strikes, and she has no recollection of the incident.  There was no objective videotape of either altercation.[6]  The

---

[5] However, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained," but whether the force was used "in a good-faith effort to maintain or restore discipline;" "contemporary standards of decency" are always violated if a prison official maliciously and sadistically uses force to cause harm, regardless of whether significant injury is evident. *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (internal marks omitted) (emphasizing that the decisive inquiry is the nature of the force).

[6] The Eleventh Circuit concluded that this case is distinguishable from *Scott v. Harris*, 550 U.S. 372 (2007), in which the district court was permitted to rely on an objective video tape of the accident in stating the facts for summary judgment purposes, and that Skelly's testimony was not so fantastic or internally

officers and their police reports provide vastly differing scenarios than Skelly, but credibility judgments cannot be made on summary judgment. *Burnette*, 533 F.3d at 1330. Therefore, viewing the evidence in the light most favorable to Skelly, as the court must at this stage of the proceedings, there is evidence from which a reasonable juror could conclude that the defendant officers each repeatedly used the Taser on a handcuffed, compliant, non-resisting pre-trial detainee without provocation to the point where she became unconscious and continued to use the Taser on her while she was unconscious. The incidents occurred in the controlled environment of the OCDC receiving vestibule and in a transport vehicle within the secure sally port of the OCDC on each occasion. Under Skelly's version of the facts, no amount of force would be justified, and the use of the Taser multiple times for no reason on an allegedly compliant pretrial detainee presents evidence from which a jury could infer a malicious and sadistic intent to apply force for the very purpose of causing harm.[7] *See, e.g.*, *Council v. Sutton*, 366 Fed.Appx. 31, 36-37 (11th Cir. 2010) (unpublished) (finding allegations sufficient to show a Fourteenth Amendment violation where officers used a Taser on a detainee who claimed he was on his knees with his hands in the air before the deputies entered his cell and that he remained subdued on the floor while the deputies used the Taser on him); *see also Danley*, 540 F.3d at 1309 ("When jailers continue to use substantial force against a prisoner who has clearly stopped

---

inconsistent that no reasonable jury could credit it. *Skelly*, 2011 WL 539053, at *2. The Eleventh Circuit did not expressly discuss this court's reliance in the now-vacated order on the uncontradicted evidence of objective medical personnel (not law enforcement) who testified that Skelly was thrashing about and suffering a psychotic episode (not unconscious) when she arrived at the hospital. Nonetheless, in light of the Eleventh Circuit's conclusion that Skelly's testimony is not so internally inconsistent or fantastic that no reasonable juror could credit it, the testimony of medical personnel was apparently not deemed sufficiently objective to render Skelly's testimony wholly unreliable or not competent for purposes of summary judgment.

[7] Qualified immunity is not available in these circumstances. Unlike the objective Fourth Amendment test for excessive force, in which an officer could apply force which is later deemed to be excessive and therefore qualified immunity is appropriate, in the pretrial detainee or prisoner context, excessive force violates the Constitution only if it was "sadistically and maliciously applied for the very purpose of causing harm." *Johnson v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002). The subjective element of such a claim is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established; therefore, if the evidence could support a finding that a violation occurred, there can be no qualified immunity. *Id.* Because there exists evidence from which a jury could infer the requisite intent, there is no basis for qualified immunity.

resisting – whether because he has decided to become subdued, or he is otherwise incapacitated – that use of force is excessive."). Crediting Skelly's testimony, questions of fact exist on every factor necessary to the Fourteenth Amendment analysis necessary to Count I.

The same questions of fact preclude summary judgment on Count II, the battery claims against the officers, which arise out of the same nucleus of operative fact as Skelly's federal claims. In Florida, no officer shall be held personally liable in tort for acts within the scope of the officer's employment, unless the act "was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. 768.28(9)(a). Viewing the facts in the light most favorable to Skelly and finding that questions of fact exist regarding the officers' intent, the court concludes that summary judgment must also be denied on this claim.

County's Motion for Summary Judgment

The County moves for summary judgment on Count III, which alleges the County is liable for the officers' alleged battery on the doctrine of *respondeat superior*. This claim is pled alternatively to Count II, in the event there is a determination that Haynes and Fields acted intentionally but not willfully, wantonly, or maliciously. *See* Fla. Stat. § 768.28 (waiving sovereign immunity in tort actions but excepting government liability for an employee's malicious conduct). "Florida law allows a plaintiff to recover against a municipality for the tortious acts of its employees based upon *respondeat superior*." *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 n.18 (11th Cir. 1988) (citing *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1122-23 (Fla. 4th DCA 1987), *rev. denied*, 519 So. 2d 986 (Fla. 1988)). "A battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA) (citing Fla. Stat. § 776.05(1)), *rev. denied*, 683 So. 2d 484 (Fla. 1996). The County argues that the officers' conduct was reasonable under the circumstances. However, the same questions of fact identified above preclude summary judgment on this claim as well. Construing the facts in the light most favorable

to Skelly, a jury could find that the officers' conduct was not reasonable under the circumstances.

Accordingly, after reconsideration on remand from the Eleventh Circuit, the court concludes that the officers' and the County's motions for summary judgment (docs. 90 & 91) must be **DENIED**.  The stay pending appeal (doc. 173) is hereby lifted, and the defendants' pending motion for taxation of attorney's fees (doc. 159) is **DENIED** as moot and without prejudice.  The case will be set for trial by separate order.

**DONE AND ORDERED** this 1st day of April, 2011.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**